## McCREERY *v.* HASKELL.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Argued November 12, 1886. — Decided December 6, 1886.

Where, under the eighth section of the act of July 23d, 1866, "to quiet land titles in California," a survey is made by the United States Surveyor General for California of a claim to land under a confirmed Mexican grant, and land is set off by him in satisfaction of the grant, the survey is operative without the approval of the Commissioner of the General Land Office. Land lying outside of such survey then becomes subject to State selection in lieu of school sections covered by the grant, and is open to settlement under the preëmption laws.

As between the State and the settler, the party which first commences the proceedings required to obtain the title, if they are followed up to the final act for its transfer, is considered to have priority of right. The rule prevails in such cases, first in time first in right.

For lands selected by the State of California, it has not been the practice of the Land Department to issue patents. When the selections are approved by the Secretary of the Interior, a list of them, with the certificate of the Commissioner of the General Land Office, is forwarded to the State authorities. This listing operates to transfer the title to the lands, as of the date when the selections were made and reported to the local land office, and cuts off all subsequent claimants. Accordingly, where a selection was made in 1868, which was subsequently approved by the Secretary of the Interior, and the lands were listed to the State by the Commissioner of the General Land Office, a patent for the same lands issued upon a settlement made in December, 1869, under the preëmption laws, conferred no title as against the State.

This was an action for the possession of land. The case is stated in the opinion of the court.

*Mr. George F. Edmunds* for plaintiff in error.

*Mr. Walter H. Smith* for defendants in error. *Mr. A. T. Britton* and *Mr. A. B. Browne* were with him on his brief.

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action for the possession of a tract of land in the county of Los Angeles, California, described in the com-

plaint as the southeast quarter of section fourteen, in township two, in that county. The plaintiff asserted title to the premises by a patent of the United States, bearing date October 10th, 1879, issued upon an alleged settlement and purchase under the preëmption laws. He claimed to have settled upon the land December 21st, 1869; to have filed his declaratory statement November 28th, 1871; and to have paid the purchase money and received his certificate of entry in April, 1876.

When this action was commenced, and when it was tried, Mrs. Fuller was one of the defendants. She traced title to the land by a patent of the State of California to one Keller, bearing date March 4th, 1874, issued to him upon a certificate of purchase, given December 21st, 1871; and by conveyance from him to her husband, now deceased. By order of the Probate Court of Los Angeles County the land was set apart to her as a homestead. The other defendant claimed possession merely as her agent and employé. After the case was brought to this court she died, and, upon representation that her interest had passed to Ellen Haskell, the latter was substituted as defendant in her place.

The land was selected by the State in part satisfaction of section sixteen of one of the townships of the county, which was within the limits of a confirmed Mexican grant, as hereafter mentioned. By the act of Congress of March 3d, 1853, making the public lands of California, with certain exceptions, subject to the general preëmption law of September 4th, 1841, sections sixteen and thirty-six of each township were granted to the State for the purpose of public schools, provided the sections, before the public surveys were extended over them, were not settled upon, and the settlement shown by the erection of a dwelling-house, or the cultivation of a portion of the land, or were not reserved for public uses or "taken by private claims." If the sections were thus settled upon, or reserved, or "taken by private claims," the State was authorized to select other lands in lieu thereof. 10 Stat. 244, c. 195, §§ 6, 7. The Mexican grant, within the claimed limits of which the premises in controversy were situated, was

known as the Sausal Redondo Rancho; it also embraced sections sixteen and thirty-six of the township. It was made to one Antonio Ignacio Abila, May 20th, 1837, by the then acting Governor of California. The claim of the grantee to the land was confirmed, on the 10th of June, 1855, by the Board of Land Commissioners for the ascertainment and settlement of priva’te land claims in California, and by the District Court of the United States, at its December term, 1856. The decree of the court became final by the dismissal, under stipulation of the Attorney General, of the appeal taken from it to the Supreme Court of the United States. In 1858, a survey of the land claimed was made by a deputy surveyor, but not being approved by the Surveyor General it amounted to nothing more than a private survey. It was not until 1868 that any other survey was made, nor does it appear that there was any application for one by the grantee or any party interested in the claim. For such neglect, the act of Congress of July 23d, 1866, "to quiet land titles in California," furnished a remedy. 14 Stat. 218, c. 219. It provided that in all cases where a claim to land by virtue of a right or title derived from the Spanish or Mexican authorities had been finally confirmed, or should thereafter be finally confirmed, and a survey and plat thereof should not have been requested within ten months after the passage of that act, or after the final confirmation subsequently made, it should be the duty of the Surveyor General of the United States for California, as soon as practicable, to cause the lines of the public surveys to be extended over said lands, and to set off in full satisfaction of such grant, and according to the lines of the public surveys, the quantity of land confirmed by such final decree, and as nearly as could be done in accordance with it. And the act declared that "all the land not included in such grant, as so set off, shall be subject to the general land laws of the United States." Under this act, the land claimed was surveyed by a deputy United States surveyor, George Hansen; and set apart to the grantee in satisfaction of the grant. The survey was approved by the Surveyor General, and over the land the section and township lines were extended. On the 22d of

April, 1868, the township plats were filed in the district land office at San Francisco.

The land lying outside of this survey thus became, in the language of the act, "subject to the general land laws of the United States." It was open to settlement with other public lands, and consequent preëmption by settlers; and to selection by the State in lieu of the school sections within the confirmed Mexican grant. *Frasher* v. *O'Connor*, 115 U. S. 102, 113. As between the settler and the State, the party which first commenced the proceedings required to obtain the title, if followed up to the final act of the government for its transfer, is considered as being entitled to the property. In such cases, the rule prevails that the first in time is the first in right. In *Shepley* v. *Cowan*, 91 U. S. 330, 337, where there was a contest between a State selection and a settler, we said : "The party who takes the initiatory step in such cases, if followed up to patent, is deemed to have acquired the better right, as against others, to the premises. The patent, which is afterwards issued, relates back to the date of the initiatory act, and cuts off all intervening claimants. Thus the patent upon a State selection takes effect as of the time when the selection is made and reported to the land office; and the patent upon a preëmption settlement takes effect from the time of the settlement as disclosed in the declaratory statement or proofs of the settler to the register of the local land office. The action of the State and of the settler must, of course, in some way, be brought officially to the notice of the officers of the government having in their custody the records and other evidences of title to the property of the United States, before their respective claims to priority of right can be recognized. But it was not intended by the eighth section of the act of 1841, in authorizing the State to make selections of land, to interfere with the operation of the other provisions of that act, regulating the system of settlement and preëmption. The two modes of acquiring title to land from the United States were not in conflict with each other. Both were to have full operation, that one controlling in a particular case under which the first initiatory step was had."

For selections of lands in California in lieu of the school sections covered by Mexican grants, it has not been the practice of the Land Department to issue patents. When the selections are approved by the Secretary of the Interior, a list of them, with the certificate of the Commissioner of the General Land Office, is forwarded to the State authorities. The list thus certified operates to convey the title to the State as fully as by patent. The Revised Statutes, embodying the provisions of the statute of August 3d, 1854, 10 Stat. 346, c. 201, provide that when a law of Congress making a grant does not convey the fee simple title to the lands, or require patents to be issued therefor, the lists of such lands certified by the Commissioner of the General Land Office under his seal of office, either as originals or copies of the originals or records, "shall be regarded as conveying the fee simple of all the lands embraced in such lists that are of the character contemplated by such act of Congress and intended to be granted thereby; but where lands embraced in such lists are not of the character embraced by such acts of Congress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim, or interest shall be conveyed thereby." Rev. Stat. § 2449.

Where, by reason of the loss of the school sections, a selection is made of other lands, the list certified operates upon the selection as of the day when made and reported to the local land office, and cuts off, as would a patent in such cases, all subsequent claimants.

In the present case the selection by the authorities of the State of the land in controversy, in part satisfaction of school section sixteen covered by the Mexican grant, was made on the 22d of April, 1868, nearly one year and eight months before the alleged settlement of the plaintiff. The subsequent approval of the selection by the Secretary of the Interior and the listing of the land to the State by the Commissioner of the General Land Office, completed the proceedings which vested the title in the State as of the date of the selection.

The case at bar is similar in the principles which control

its disposition to that of *Frasher* v. *O'Connor*, which was before us at the October Term, 1884. 115 U. S. 102. It differs from it in the fact, that there the defendants claimed that they had acquired, by their settlement upon the land, the right of preëmption, and, as preëmptors, were entitled to patents of the United States, and, therefore, could call in question the validity of the proceedings by which the land was selected by the State agents and listed to the State; but here the plaintiff has obtained a patent of the United States, issued upon a settlement made after the selection of the land by the State. In the former case the court held that the only question for consideration by the officers of the United States respecting lands granted to the State was, whether the State possessed the right to claim the land under the grant, and whether the land was subject to selection by its agents. Irregularities in the transactions between the State agents and its purchasers were matters which did not come under review by those officers. So far as the general government is concerned, it was sufficient that the State did not complain, and accepted the selection in satisfaction of the grant to her. The claim of a third party could not be improved by showing irregularity in the proceedings to which the State did not object. The issue of a patent to the alleged preëmptors in that case — it being held that they had no right to settle upon the land with a view to secure a preëmptive right — would not have rendered their position more tenable.

The contention of the plaintiff, as we understand it, is, that the land in controversy, being within the claimed limits of a Mexican grant, was not open to selection by the State until the survey of the land confirmed was finally approved by the Land Department, and that such approval was not had until October, 1871, after his settlement. It was upon that theory that the local court of California held that the Secretary of the Interior and the Commissioner of the General Land Office (for it seems that they both acted) had inadvertently and by mistake listed the land to the State in lieu of the quarter section supposed to be lost. It would seem that at one time the Land Department had come to the same conclusion, although

its utterances on the subject were hesitating and conflicting. In *Frasher* v. *O'Connor*, we considered at length the effect of the survey of Hansen, and the right of the State to select lieu lands outside of it. By the act of Congress of July 1st, 1864, " to expedite the settlement of titles to lands in the State of California," 13 Stat. 332, c. 194, the surveys of private land claims in that State were made subject to the supervision and control of the Commissioner of the General Land Office. Without his approval a survey had no binding force, and could not be treated as segregating the land surveyed from the public lands. That act also provided that it should be the duty of the Surveyor General of California to cause all private land claims finally confirmed to be accurately surveyed, and plats thereof to be made whenever requested by the claimants, provided the claimant should first deposit in the District Court of the district a sufficient sum of money to pay the expenses of the survey and plat, and of the publication required. It was supposed that the surveys of confirmed claims under Mexican grants would be thus expedited and patents sooner obtained. But no such result followed. Many claimants failed to ask for a survey of their claims. Most of the grants were of a specific quantity of land lying within boundaries embracing a much larger quantity. The specific quantity to which alone the grantee was entitled could be segregated and set apart only by an official survey. Until that was had the grantee remained a cotenant with the government in possession and use of the whole tract. He was not, therefore, inclined to expedite the survey. His interest was to postpone it. To do away with the delays which grew out of this and other causes the act of July 23, 1866, to which we have referred, was passed, declaring that if no survey be requested, as provided by the act of 1864, within ten months, as to previously confirmed claims, and ten months after confirmation as to subsequently confirmed claims, it should be the duty of the Surveyor General to survey the land and to set off the land confirmed in full satisfaction of the grant; and " that all the land not included in such grant as so set off shall be subject to the general land laws of the United States." The survey in such cases was thus with-

drawn from the supervision of the Land Department. That the grantee should be bound by it, at least until the survey should be set aside by competent authority, was not unreasonable. It was always in his power to have a survey made of the confirmed claim under the act of 1864, which would have been subject to the supervision and control of the Land Department. It was his neglect to request such survey that conferred upon the Surveyor General the duty of acting upon his own responsibility. The action was sufficient to subject the land outside of the survey to State selection and other modes of disposal of the public lands. It is true the Surveyor General did afterwards, upon the demand of the grantee, order a new survey and recall the township plats; but his action was not sustained by the Secretary of the Interior. That officer set aside the new survey and ordered the township plats to be returned to the land office, and approved of the original survey. The selection by the State was made before the order for a new survey and the withdrawal of the township plats. It is not necessary to express any opinion as to what would have been the effect upon the selection if the new survey had been sustained. As we said in *Frasher* v. *O'Connor*, "all that is necessary to decide here is, that, after the grant had been surveyed and the township plats filed, the State was at liberty to make selections from land lying outside of the survey, and preëmptors were at liberty to settle upon it, and, if the survey were not ultimately set aside, their rights thus initiated would be protected." 115 U. S. 115.

The conclusion we have reached renders it unnecessary to consider the effect of the judgment rendered in the case of *Keller* v. *McCreery*, as an adjudication of the questions presented with reference to the premises in controversy.

*Judgment affirmed.*