[No. 13216.   Department One. — April 2, 1890.]

HENRY N. HOWELL, APPELLANT, *v.* J. S. SLAUSON, RESPONDENT.

83  539
106  416

STATE LANDS — LISTING OF INDEMNITY SCHOOL SELECTIONS — RELATION OF STATE'S TITLE — PRE-EMPTION — CONFLICT OF PATENTS. — Where, by reason of the loss of school sections, a selection is made by the state of other lands in lieu thereof, the listing of such lands to the state by certificate from the general land-office of the United States conveys the legal title to the state as effectually as a patent would have done; and the title so transferred relates back to the date when the selection was made and reported to the local land-office, and cuts off all subsequent claimants. A state patent to such lands will prevail over a United States patent to a pre-emptioner whose settlement upon the land was subsequent to the date of the state's selection, though prior to the listing of the land to the state.

ID. — EVIDENCE OF LISTING — OFFICIAL CERTIFICATE — GENUINENESS OF SIGNATURE — PRESUMPTION. — When the certificate of the listing of indemnity school selections to the state was made in and transmitted from the department of the United States government, where the duty to make and transmit it resided, to the state land-office, the state has a

right to rely upon the presumption that the officers of the general land-office of the United States properly performed their official duty in regard to the listing of the lands; and whether the signature of the commissioner of the general land-office is genuine or not, the certificate cannot be assailed on account of any defect in the authentication of it, after the state has passed title to the land by its patent, and the certificate has been treated as genuine by both the state and federal land-office.

Id. — Filing of Certified List — Evidence of Ex-register. — The testimony of the ex-register of the state land-office is competent to prove the receipt and filing by him of a certified list of indemnity school selections. His testimony would be sufficient to prove the filing of the list without an indorsement of filing thereon, because a paper is deemed to be filed when presented at the proper office and deposited with the papers therein.

Id. — Cancellation of Listing. — The commissioner of the general land-office of the United States cannot cancel the state's selection of lieu lands and the listing thereof to the state, in favor of a pre-emptioner, the inception of whose right did not ante-date the original selection of the land by the state.

Prescriptive Title — Possession of Lawful Owner — Adverse Claim without Possession. — A lawful owner in possession can derive no benefit by prescription as against an adverse claimant without title; and no mere assertion of an adverse claim can ripen into a prescriptive title in favor of the claimant, if not accompanied by actual and exclusive possession for the period prescribed by the statute of limitations.

Appeal from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*W. T. Williams*, for Appellant.

*Houghton, Silent & Campbell*, for Respondent.

Gibson, C. — This action was brought to quiet title to a portion of the southwest quarter of the southeast quarter of section 18, township 2 south, range 13 west, San Bernardino meridian, and to recover the possession thereof. Defendant had judgment, from which, and an order denying a new trial, plaintiff appeals.

The plaintiff claims title by virtue of mesne conveyances from L. Ketchum, a patentee of the United States;

and the defendant, under similar conveyances from F.
S. Clough and P. H. Newbill, patentees of the state of
California, and also by his own adverse possession, and
by virtue of a judgment of the late district court of the
seventeenth judicial district, rendered in an action
involving the right to the possession of the premises
in dispute, prosecuted by Clough and Newbill against
Ketchum.

The facts, as shown by the findings, are these: April
22, 1868, the plat of the survey of the land in question
was filed in the United States land-office at San Fran-
cisco, the land then being within the San Francisco land
district.   Afterward, on the formation of the Los Angeles
land district, which included the same land, the plat was,
on November 21, 1871, transferred to and filed in the
office of that district at Los Angeles.

On the same date that the plat was filed in the San
Francisco office, the state of California selected the quar-
ter-section including the land in question in lieu of
other lands, which selection was approved on November
24, 1871, and on the same date duly listed and certified
over to the state as an indemnity in lieu of school-lands
granted to the state, which were included within a private
land claim.

L. Ketchum, on September 10, 1869, being then enti-
tled to pre-empt land under the laws of the United States,
entered and settled upon the quarter-section above men-
tioned; and on April 5, 1876, upon payment of the gov-
ernment price, he received a certificate of purchase for
it as such pre-emptioner; subsequently, on the 13th of
November, 1880, a patent for the land was issued to him
by the United States.

An application to the register of the state land-office
to purchase the same quarter-section was duly made by
one Charles Whipple, a competent person, prior to the
eighteenth day of April, 1872, on which date a certificate
of purchase therefor was issued to Whipple.   This cer-

tificate is assigned and transferred to Clough and New-bill July 16, 1872.

It appears, from the evidence, that on May 24, 1873, a patent for the land was issued by the state to Clough and Newbill.

The findings further disclose that L. Ketchum remained in possession of the premises until September 12, 1873, on which date he was removed by the sheriff on a writ of execution issued upon a judgment of the late district court of the seventeenth judicial district, rendered in an action brought by Clough and Newbill against him to recover the possession of the property, since which time Clough and Newbill and their grantees have retained the exclusive possession of the property.

The question arising upon these facts is, whether the United States parted with its title to the quarter-section in controversy before L. Ketchum, through whom appellant claims, entered and settled upon the land as a preemptioner.

The assumption of the appellant with regard to this question is, and it constitutes his main contention, that as the document received in evidence against his objection, as proof of the listing of the land in question to the state of California, was not shown to be the original record, nor a certified copy of the original record, no other evidence of such listing having been offered, there was no evidence that the land had ever been listed to this state.

The certificate and approval appended to the list are as follows:—

"DEPARTMENT OF THE INTERIOR,

"GENERAL LAND-OFFICE, 24th November, 1871.

"It is hereby certified that the tracts described in the foregoing lists are embraced in the original lists now on file in this office of lands selected as indemnity for deficiencies in the townships named, which indemnity school selections are authorized in the above-cited acts

of Congress of March 3, 1853, February 26, 1859, and July 23, 1866.

"It is further certified that said tracts have been examined and compared with the township's plat of tract-books of this office, and that the indemnity is improperly due to the townships for which selected, are found to be subject to selection, and are free from conflict, and it is therefore recommended that the lists be approved, subject to any valid interfering rights which may have existed at the date of selection.

"WILLIS DRUMMOND, Commissioner."

"DEPARTMENT OF THE INTERIOR,<br>"24th November, 1871. .

"The foregoing list is hereby approved, subject to any valid interfering rights which may have existed at the date of selection.        C. DELANO, Secretary."

The foregoing certificate shows that the document is a transcript of the original list retained on file in the general land-office, and is, we think, sufficient in form. The second paragraph of the certificate is not clear, but it is evident that the word "improperly," used in it, is either a clerical or typographical error; as, taken in connection with the context, the negative prefix to the word should be omitted. When so read, its meaning is clearer.

Regarding the reception of the document from the general land-office, H. C. Austin testified: "I was register of the land-office of Los Angeles in 1871, and for two years before that time. I remember that there was in the office a list, No. 1, indemnity school selection. [Upon being shown a list introduced in evidence.] I believe that to be the original document as filed in the district land-office by myself some time in 1870 or 1871. I received it as register of the United States land-office of Los Angeles district from the commissioner of the general land-office at Washington."

J. D. Bethune, the register of the land-office at Los

Angeles, who produced the document, testified, that, although he did not find any filing mark upon it, he found it on file in his office; that it was delivered to him as a part of the records of said office, and "was much worn, soiled, and torn, and no seal appeared upon it." In an attack upon the genuineness of the signature of Commissioner Drummond, J. L. Ayers testified that he was familiar with the signature of the latter, had frequently seen him write, and had corresponded with him, and the signature referred to, purporting to be that of Willis Drummond, was not genuine. Ex-Register Austin's testimony tended to corroborate this witness as to the character of the same signature. Whether the signature was genuine or not, it is now too late to attack the document on account of any defect in the authentication of it. It was made in and transmitted from the department of the United States government where the duty to make and transmit it resided. The register of the land-office at Los Angeles treated it as having been properly authenticated. And it is evident that it was so regarded by the general land-office, from the fact that the commissioner, by a letter of instruction to the register and receiver of the Los Angeles district, filed in their office May 25, 1885, attempted to cancel the list to the extent of the quarter-section in contest here.

We think the state had a right to rely upon the presumption that the officers of the general land-office properly performed their official duty in listing and certifying the lieu land in question to it. (*The Eureka Case,* 4 Saw. 319.)

It is also urged that the list was never filed in the land-office at Los Angeles; but this indorsement appears upon it: "Los Angeles Land District. List No. 1 received and filed December 5, 1871." And that it was so received and filed is established by the testimony of ex-Register Austin, above quoted. His testimony would be sufficient without the indorsement, because a paper

is deemed to be filed when presented at the proper office and deposited with the papers therein. (*Tregambo* v. *Comanche M. & M. Co.*, 57 Cal. 501.)

When the list was made, certified, and transmitted in this case, it conveyed the legal title to the state as effectually as a patent would have done; and the title so transferred related back to the date when the selection was made and reported to the local land-office. (*McCreery* v. *Haskell*, 119 U. S. 327.) In that case it was said:—

"Where, by reason of the loss of the school-sections, a selection is made of other lands, the list certified operates upon the selection as of the day when made and reported to the local land-office, and cuts off, as would a patent in such cases, all subsequent claimants."

The facts of that case and this are somewhat similar. There the plaintiff's claim of title rested upon a patent of the United States dated October 29, 1879, based upon an alleged pre-emption of the land, upon which he had settled December 21, 1869, filed his declaratory statement therefor November 28, 1871, and received his certificate of purchase in April, 1876. While that of one of the defendants, who was the real party in interest, was deraigned from the state of California, through a patent of the latter to one Keller, dated March 4, 1874, which was based upon a certificate of purchase of the land given December 21, 1871. The selection of the land was made by the state on the 22d of April, 1868; as the court said, "nearly one year and eight months before the alleged settlement of plaintiff." It was accordingly held that plaintiff had no title. It does not appear in the report at what time the land was listed and certified over to the state; but as the land was actually listed and certified over, the date was immaterial, in view of the fact that the selection by the state had been made prior to plaintiff's attempt to pre-empt the land.

In the case at bar the selection of the lieu land in question was made by the state on the 22d of April, 1868, and the subsequent listing of it by the United States vested the title in the state as of that date; consequently Ketchum acquired no right to the land by his attempt made thereafter to acquire the same as a pre-emptioner, and the patent of the United States issued to him as such pre-emptioner conveyed nothing. (*Mc-Creery* v. *Haskell,* 119 U. S. 327; *Pratt* v. *Crane,* 58 Cal. 533.)

The attempt of the commissioner of the general land-office to cancel the state's selection of the land and the listing of the same to the state by the United States, above referred to, made thirteen years after the state had sold the land to Whipple, was fruitless, because the United States had, as we have seen, parted with all its title to the land when the same was listed to the state. (*Tubbs* v. *Wilhoit,* 73 Cal. 61.)

The same result would follow even if we assume, with appellant, in accordance with the certificate of the commissioner and the approval of the Secretary of the Interior, appended to the list, that the approval of the state's selection of the land was subject to valid interfering rights at the date of the list; because, as we have seen, Ketchum, through whom appellant claims title, had made no connection with the title of the United States prior to the date when the state initiated its right by selecting the land and reporting the same to the proper authorities.

From the foregoing, we think it apparent that the trial court was correct in its conclusion of law, to the effect that at the commencement of the action the defendant held the legal title to the land and was rightfully in possession of it.

The other conclusion reached, with regard to the title acquired by the defendant and his predecessors by adverse possession, adds nothing to defendant's legal title,

because such possession was held under the legal title; and as the plaintiff and his predecessors had no title to the land, there was no title in them that an adverse possession could overcome. Again, as the claim of title made by them was not coupled with the possession of the land claimed, it therefore amounted to nothing more than a mere assertion of an adverse claim that time could not ripen into a prescriptive title; for no claim of title without actual and exclusive possession for the period prescribed by the statute of limitations will create a title by prescription.

We advise that the judgment and order appealed from be affirmed.

HAYNE, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.