## IN RE DEWAR'S ESTATE.

ADMINISTRATORS—*Probate law—Appeals.*—In a probate case, where an appeal to the territorial District Court was perfected prior to the adoption of the State Constitution, the appellate jurisdiction of the District Court in such case was not ousted by the provisions of the Constitution abolishing Probate Courts and transferring pending probate matters to the District Court for the exercise of original jurisdiction.

SAME—*Fees of administrators.*—The claim of an administrator for fees is an inchoate right until ascertained and allowed upon a final accounting, and must be regulated by the law in force at the time thereof, and not by the law at the time of his appointment, unless such claim had become a vested right by reason of the services being fully performed prior to the passage of the latter law, and the fact appear upon such final account.

SAME—*Contracts — Vested rights.*—The law regulating the fees of administrators is not a contract that the same compensation will continue during the term of any incumbent; nor does the holding of such office create a vested right to receive for future services the fees established at the time of his appointment.

SAME—*Fees—Statutory interpretation.*—The Act of September 14, 1887, diminishing the fees of public and other administrators, is not a local or special law within the inhibition of the Act of Congress of July 30, 1886, prohibiting territorial legislatures from passing local or special laws, increasing or decreasing fees, percentage, or allowance of public officers during their term of office.

RECORDS—*Filing— What constitutes.*—The filing of papers consists in depositing them with the proper custodian for keeping; and the indorsement "filed," upon a certain date, is not *ipso facto* a filing, but merely a proper memorandum of the fact.

*Appeal from First Judicial District, Lewis and Clarke County.*

The orders sustaining objection to appellant's final account and entering a decree of distribution were made by HUNT, J.

Statement of the case by the judge delivering the opinion.

This is an appeal of Henry C. Yaeger, administrator of the estate of William A. Dewar, deceased, from an order of the District Court, exercising probate jurisdiction, sustaining objection to the final account of the administrator, whereby the court disallowed certain fees by him claimed. There was also an appeal from the order of distribution. That appeal was dismissed by this court, at this term, *ante*, page 422, and the case thus relieved of much matter contained in the record, and argued in appellant's brief.

Before the admission of this commonwealth into the Union of States, all probate matters were adjudicated in the Probate Courts of the counties. From these courts appeals laid to the District Courts. (Tit. 11, ch. 3, Code Civ. Proc.) The Territory became a State November 8, 1889. By the Constitution, article viii. section 11, and section xx., Schedule, sec. 4, all probate jurisdiction was transferred to the District Court, and the Probate Court went out of existence. The Schedule further provides: " Sec. 13. All matters, cases, and proceedings pending in any Probate Court in the Territory of Montana at the time the State shall be admitted into the Union, and all official records, files, moneys, and other property of or pertaining to such court, are hereby transferred to the District Court in and for the same county, and such District Court shall have full power and jurisdiction to hear, determine, and dispose of all such matters, cases, and proceedings." "Sec. 2. All lawful orders, judgments, and decrees in civil causes, all contracts and claims, and all lawful convictions, judgments, and sentences in criminal actions, made and entered, or pronounced by the courts within the Territory of Montana, and in force at the time the State shall be admitted into the Union, shall continue and be and remain in full force in the State unaffected in any respect by the change from a territorial to a State form of government, and may be enforced and executed under the laws of the State.

Henry C. Yaeger, appellant, was appointed by the Probate Court of Lewis and Clarke County, administrator of the estate William A. Dewar, deceased, on June 1, 1887. The appraisement and inventory of the estate, approved July 23, 1887,

shows $884.83 in money, and a large amount of real estate, making a total of $36,446.83. On April 11, 1889, the administrator filed his final account and petition for distribution. The account discloses that the whole amount of money received by him from sales of real estate and other cash receipts is $11,361.29; claims paid, $8,397.28; and expenses of administration, $2,954.22. In the latter item is included $1,501.77, administrator's fees, a percentage on $36,794.33, which was the appraised value of the estate. A. J. Steele and Lewis Davis, purchasers from and assignees of the heirs of the estate, and the persons to whom final distribution was to be made, objected to the final account of the administrator, in that he had charged his fees upon $36,794.33, the appraised value of the estate, whereas he should have charged upon $11.361.29, which was the sum actually received by him upon the sales of property and other cash sources. The administrator contended that he was entitled to fees under the provisions of section 253 of the Probate Practice Act, as follows: "Sec. 253. When no compensation is provided by the will, or the executor renounces all claim thereto, he must be allowed commissions upon the amount of the whole estate accounted for by him, as follows:" — then providing percentages for different amounts. The distributees relied upon the Act of September 14, 1887 (Extra Sess. 15th Assembly, p. 59), as follows: "Sec. 1. That section 253, second division of the Compiled Statutes of Montana, be, and the same is hereby amended so as to read as follows, to wit: When no compensation is provided by the will, or the executor renounces all claims thereto, he must be allowed commission on all sums of money only actually received by him from the sale of property of the estate, or actually disbursed by him in the settlement of the estate, as follows:" — then follows percentage to be allowed, and provides that the same shall apply to all administrators. The Probate Court held with the administrator, and on May 13, 1889, overruled the objections of the distributees, and allowed the final account, with the fees as claimed by the administrator. On June 8, 1889, the distributees gave notice of appeal from this order, and on June 11, 1889, filed their undertaking on appeal as required by law.

The case is next met in the District Court on April 29, 1890, after the State had come into life, and the Probate Court had ceased to exist, and its jurisdiction and business had been transferred to the District Court. (Sec. xx. Schedule, § 13.) On that day the District Court directed that the clerk indorse the papers in the case, *nunc pro tunc*, as filed July 3, 1889. This was done on application of the distributees, it appearing that no indorsement had been made on the papers of their filing in the District Court. The facts which were the grounds of this application were set forth in the affidavits of R. H. Howey, probate judge, in May, June, and July, 1889, of John Bean, clerk of the District Court since November 8, 1889, and of John B. Clayberg, attorney for the distributees. The facts so set forth were not controverted, and were as follows: Probate Judge Howey, in pursuance to the appeal from his court to the District Court, prepared a transcript of the docket entries in the case, and on the third day of July, 1889, delivered the same, together with other papers pertaining to the said matter, to W. F. Parker, then clerk of the District Court. John Bean, clerk, makes oath that since November 8, 1889, the distributees' attorneys frequently inquired for the papers in the case; that he made diligent search for the same, and could not find them until he called to his assistance W. F. Parker, his predecessor in office, when, on April 10, 1889, the papers were found filed away with other papers in the vault, where they had been placed by said Parker. J. B. Clayberg, the attorney, says that before November 8, 1889, he had inquired for said papers, and said Parker could not find them. Upon this showing that the papers in the case had been duly deposited with the clerk of the District Court by the probate judge on July 3, 1889, and had been found in his office, the District Court ordered that the case be docketed, and placed on the civil calendar of the court. The administrator then filed a demurrer to the jurisdiction of the District Court to hear the case. The demurrer was on the ground that by the operation of the Constitution, upon the admission of the State, the decree of the Probate Court became the decree of the District Court, and the District Court had no jurisdiction to review the order of a former judge. This demurrer was overruled. The appeal then being heard, the Dis-

trict Court made an order reversing the Probate Court upon its ruling that the administrator was entitled to $1,501.77 fees as a percentage on $36,446.83, the appraised value of the estate, and held that he was to be allowed $484.45 as a percentage on $11,361.29, money actually received by him from the sale of property. From this order the appeal is prosecuted. By the agreement of counsel the great mass of papers in the case is omitted from the record, and only sufficient is brought up in the record to exhibit the foregoing facts.

The appellant, administrator, contends for the following propositions:—

I. The District Court had no jurisdiction to hear the case, and herein: *First.* The appeal was not in the District Court until April 29, 1890, when the *nunc pro tunc* indorsement was placed upon the papers, and the case was ordered upon the docket of the court. *Second.* The foregoing proposition being correct, the judgment of the Probate Court became, by the transition to the State form of government, a judgment of the District Court, and the District Court could not sit on an appeal from its own order.

II. Even if the District Court had jurisdiction to hear the case, the allowance of the administrator's fees should have been upon the basis provided in section 253, which would have been $1,501.77, and not reckoned as to be allowed by that section as amended in the Act of September 14, 1887, by which the fees would amount to only $484.45. The law in force when the administration proceedings commenced must govern, and not the law passed during the proceedings, and prior to the final account and settlement.

*J. W. Kinsley,* for Appellant.

The court below erred in overruling the demurrer of the appellant to the jurisdiction of the court to consider this case as presented to it April 29, 1890, and the administrator's demurrer to its jurisdiction should have been sustained. This case was heard on respondent's objections to administrator's final account, and determined May 13, 1889. An appeal was attempted. At the time Montana came in as a State this was

a determined case in the Probate Court of Lewis and Clarke County. Only pending cases were transferred. (Const. sec. xx. Schedule, § 13.) This case was docketed as a new case in the District Court, and regularly numbered "203," April 29, 1890, *nunc pro tunc* as of July 3, 1889. The District Court never assumed jurisdiction of this appeal until April 29, 1890, at which time the whole matter of the administration was regularly in that court. The appeal thus inaugurated was from one side of the same court to another, or the creation of a new case for the purpose of establishing an appeal. A *nunc pro tunc* order cannot be made to give original jurisdiction lost by laches. The Probate Court lasted four months after this case was decided. (*Ludlow* v. *Johnston*, 3 Ohio, 553; 17 Am. Dec. 609–628; *Hegeler* v. *Henckell*, 27 Cal. 492; *In re Fifteenth Avenue Extension*, 54 Cal. 179.)

The taking of an appeal does not suspend or impair the power of an inferior court over its own records, or its capacity to supply papers when lost. (*Buckman* v. *Whitney*, 24 Cal. 267.) A record cannot be contradicted by affidavits. (*Boston* v. *Haynes*, 31 Cal. 108.) Amendments and orders *nunc pro tunc* can only be allowed when there is some record from which to make the order; evidence outside of the record cannot supply utter want of record. (*Makepeace* v. *Lukins*, 27 Ind. 435; 92 Am. Dec. 263.) Papers found not filed or indorsed cannot be made subject of original entry *nunc pro tunc*. (*Raymond* v. *Smith*, 1 Met. [Ky.] 65; 71 Am. Dec. 458; *Hudson* v. *Hudson*, 20 Ala. 364; 56 Am. Dec. 200; *Metcalf* v. *Metcalf*, 19 Ala. 319; 54 Am. Dec. 190.) The demurrer in this case should have been passed upon as a separate proposition, and an opportunity given to have taken any action which the appellant had deemed wise to take before action was taken on the main question involved. (§ 87, Code Civ. Proc.) The court below erred in rejecting the item of $1,501.77, administrator's fees in said account. This estate was placed in appellant's charge as administrator June 1, 1887. The inventory and appraisement was filed and approved July 23, 1887, showing that the administrator had in his possession property to the value of $36,446.83. If the whole estate was lawfully in his hands it had to all be accounted for. Section 253, page 338, allows administrator

commissions on "the whole estate accounted for by him."
Objection of respondents is that no more than $11,361.29 of
said estate has come into the hands of or had been administered
upon by said administrator. (*Estate of Isaacs*, 30 Cal. 113;
*Estate of Simmons*, 43 Cal. 550; *Estate of Ricaud*, 70 Cal. 69.)
The laws in force when these proceedings were commenced
must govern. The administrator withdrew his fees as he was
authorized to do. The only risks he was then exposed to were
two: (1) That he secure legal possession of all the property;
(2) that the appraiser's estimates remain uncontradicted. The
respondents are estopped from denying either the possession
of the administrator or the appraised value, for they claim an
interest in that estate by a deed from the heirs to the very prop-
erty named in the schedule, and the deeds show a consideration
of $30,000 after $11,361.29 of the property has been sold off
the estate.

After sustaining the objection to the administrator's account,
and approving the report as amended, the court below erred in
making a decree of distribution, for the following reasons: (*a*)
By so doing it approved the suggestion of the administrator, that
no proof of heirship has been made which justifies a distribution.
(*b*) No notice was given to the administrator of the petition for
distribution as required by law. By the report of the adminis-
trator it appears that this estate has not been reported or
adjudged ready for distribution. (*c*) After the action on the
final account sustaining the objections to administrator's fees,
the report should have been recommitted to the administrator
to file a new account, with the item of fees corrected, and an
opportunity given him to insert additional expenses incurred,
to show his transactions between April 11, 1889, and July 30,
1890. (See § 289, p. 346, Comp. Stats.; *Houston* v. *Mayes*, 77
Tex. 265.) (*d*) If the administrator was not by law entitled
to the fees charged, he should have had an opportunity to apply
to the court for a special allowance, as provided by the laws of
Montana. It is competent for this court to make any order
herein which it may deem equitable. (*McCain* v. *McConnell*,
Pa. Nov. 1890.)

*McConnell & Clayberg*, for Respondents.

The first question is, whether the case was properly appealed to the District Court of Lewis and Clarke County prior to the abolition of the Probate Court by the Constitution; that is, did the District Court have jurisdiction to hear the case and make the order appealed from? It will be remembered that the appeal was taken and the papers returned to the District Court on the third day of July, 1889, and were duly deposited with the clerk of that court by the probate judge. This was at a time when an appeal from the Probate to the District Court in such cases was authorized by statute. (Civ. Prac. Act, § 445.) The appeal was taken by filing in the Probate Court the notice of appeal, and serving a copy thereof on the adverse party, and by filing the necessary undertaking. (Code Civ. Proc. §§ 450, 451, 452, 453.) It then became the duty of the probate judge or clerk to make a transcript from the docket of that court of all the proceedings had in said action, and transmit the same, with other papers pertaining to the matter, to the clerk of the District Court. (§ 454, Code Civ. Proc.) This transmission of the docket entries and other papers to the clerk of the District Court must perfect the appeal and place the entire matter within the jurisdiction of the District Court. This was all completed on the third day of July, 1889. The Probate Court thereby lost its jurisdiction in the matter, and the jurisdiction of the District Court attached. The fact that the clerk of the District Court failed to indorse the papers when they were deposited with him can in no way affect the jurisdiction of the District Court. Papers are filed with the clerk when they are left in his custody, and the question of indorsement is immaterial, unless the statute expressly requires it. (*Tregambo* v. *Comanche Min. Co.* 57 Cal. 501; *Harrison* v. *Clifton*, 75 Iowa, 736, and cases cited.) The parties to the litigation certainly cannot lose rights by a mere misprision of the clerk. We must therefore conclude that the appeal was pending in the District Court of Lewis and Clarke County, Territory of Montana, prior to the adoption of the Constitution, and by virtue of the provisions of the Constitution the appeal passed to the jurisdiction of the District Court of Lewis and Clarke County, State of Montana. (§ 15, art. xx. Const.) None of the cases cited by counsel for the appellant relative to the doctrine of *nunc pro*

*tunc* entries have any application here. The deposit of the papers with the clerk of the District Court gave the jurisdiction to the District Court, not the indorsement of them, and it was not an entry of any material matter *nunc pro tunc*, but merely the indorsement *nunc pro tunc* of the papers already filed. The principal question in this case, however, is as to whether the Probate or District Court was right upon the administrator's fees, and this depends upon the construction of the statutes of the State of Montana. The appellant claims that his fees and commissions should be determined as provided under section 253 of the second division of the Compiled Statutes. Respondents insist that his fees and commissions must be determined under the provisions of an act approved September 14, 1888, entitled "An act to amend section 253, second division of the Compiled Statutes of Montana." (Laws of 1888, p. 59.)

Under section 253, the appellant claims to be entitled to fees and commission upon all the estate coming into his hands as administrator, as shown by the inventory and appraisal, and claims under other provisions of the statute that this commission and his fees are immediately due upon the filing of the inventory and appraisal, and that he may withdraw from administration sufficient funds to cover such fees and the expenses of administration. The claim of appellant in this regard is based upon section 276 of the second division of the statutes —at least in part[2]—which provides that the administrator, as soon as he has sufficient funds in his hands, shall pay the funeral expenses, etc., and that he may retain in his hands the necessary expenses of administration. This section was copied from the California statute. (§ 1646, Code Civ. Proc. Cal.) Under this statute it has been held by the California courts that although the administrator may retain sufficient funds in his hands to meet the expenses of administration, his commissions and fees are to be ascertained, and are payable only when the estate is ready for distribution. (*Estate of Miner*, 46 Cal. 564; *Estate of Barton*, 55 Cal. 90; *Estate of Rose*, 80 Cal. 180; *Ord v. Little*, 3 Cal. 287; Wœrner's Law of Administration, § 533, p. 1176.) The proposition being established that the commissions and fees are not due and payable until the estate is ready

for distribution, the administrator had no vested right in and to any commissions upon the filing of the inventory and appraisal, and the legislature had full power to change his commissions and fees at any time, and until his fees and commissions are determined by the court upon the presentation of his final account, he simply has an inchoate right to such fees as the law may permit and the court allow.   Section 253 of the second division of the Compiled Statutes was entirely repealed and obliterated by the Act of September 14, 1888.   (Endlich's Interpretation of Statutes, § 196, and cases cited; *Goodno* v. *Oshkosh*, 31 Wis. 127.)   The right to commissions and fees being merely an inchoate right at the time of the repeal of the act upon which such right was founded, fell with the act. (*Butler* v. *Palmer*, 1 Hill, 324; *Ray* v. *Goodwin*, 4 Moore & P. 341; 9 Barn. & C. 750; *Van Inwagen* v. *City of Chicago*, 61 Ill. 34, and cases cited.)   This principle is also illustrated in cases in which parties have a statutory right of action for damages, but before judgment is obtained the statute under which suit is brought is repealed.   (*Drehman* v. *Stifel*, 41 Mo. 184; 97 Am. Dec. 268; *Randall* v. *Krieger*, 23 Wall. 137.) Under the principles enunciated in the above decisions, the administrator must be allowed commissions as provided in the Act of September 14, 1888.   But again, the right of an officer to compensation fixed by statute is not a vested right, nor is it a contract, and the legislature may, at its own pleasure, reduce such compensation and even abolish it.   (*People* v. *Devlin*, 33 N. Y. 269; 88 Am. Dec. 377; *Butler* v. *Commonw.* 10 How. 402; *Hoke* v. *Henderson*, 4 Dev. 1; 25 Am. Dec. 677; *Connor* v. *City of New York*, 5 N. Y. 285; *Miller* v. *Kister*, 68 Cal. 142, and cases cited.)

The only remaining question is, what effect the Restrictive Act of Congress of July 13, 1886, had upon the power of the legislature of Montana to pass the Act of September 14, 1888. The only provision of the Restrictive Act which can have any bearing upon the question is as follows: "That the legislatures of the Territories of the United States, now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases; that is to say, . . . . creating, increasing, or diminishing the fees, percentages, or allowances

of public officers during the term for which said officers were elected or appointed." The question therefore is, is the law of September 14, 1888, a special or local act within the meaning of the Restrictive Act of Congress? In terms this Act of September 14, 1888, is neither special nor local. It pertains to the compensation of executors when no compensation is provided for by will, or when they renounce all claim to such compensation, and for all public and other administrators. It will be perceived that this statute is not limited to any locality in the State, or to any particular officer or person in the State, but is applied to a class of persons and officers throughout the entire State. *All* executors, where no compensation is provided in the will, or where they renounce such compensation, *all* administrators, and *all* public administrators, are within the provisions of the statute. It seems to us that nothing could be plainer than the proposition that this is a general and not a special or local law. (*Van Riper* v. *Parsons*, 40 N. J. L. 1; *Wheeler* v. *Philadelphia*, 77 Pa. St. 338; *McAunich* v. *Mississippi etc. R. R. Co.* 20 Iowa, 338; *Haskel* v. *City of Burlington*, 30 Iowa, 232; *Iowa Railroad Land Co.* v. *Soper*, 39 Iowa, 112; *Little Rock etc. Ry. Co.* v. *Hanniford*, 49 Ark. 291; *Dow* v. *Beidelman*, 49 Ark. 325; *Montague* v. *State*, 54 Md. 481; *Abeel* v. *Clark*, 84 Cal. 226; *State* v. *Miller*, 100 Mo. 439; *Longan* v. *County of Solano*, 65 Cal. 122; *Brooks* v. *Hyde*, 37 Cal. 366; *Humes* v. *Missouri Pac. Ry. Co.* 82 Mo. 221; 52 Am. Rep. 369; *Skinner* v. *Bogert*, 42 N. J. L. 407.) The following cases have held that legislation classifying cities according to their population was general and not special, even though by such classification the law would apply to but one city: *Ewing* v. *Hoblitzelle*, 85 Mo. 64; *Mason* v. *Spencer*, 35 Kan. 512; *Darrow* v. *People*, 8 Colo. 417; *State* v. *Hawkins*, 44 Ohio St. 98; *In re Church*, 92 N. Y. 1; Sedgwick's Statutory and Constitutional Law, pp. 534, 535, 536. To make a law general under the above authorities it is not necessary that it should apply to every person in the State, but it is sufficient if it applies to any particular class of persons, and administrators and executors are just as distinct a class of persons as the head of a family is in the exemption law, or a mechanic and material man in the mechanics' lien law.

DE WITT, J. — We will examine the appellant's position in the order above stated.

I. Appellant contends that the District Court did not obtain jurisdiction of the case until April 29, 1890, when the papers were ordered to be indorsed "Filed July 3, 1889," and the case ordered onto the trial docket. It is not disputed that the papers in the case were duly deposited with the clerk of the District Court, July 3, 1889. Appellant insists that they were not "filed" that day, but only on April 29, 1890, and the court had no power to make the *nunc pro tunc* order. Appellant misapprehends the signification of the term "file." To file papers is to deposit them with the proper custodian for keeping. The marking of them "filed" by the clerk is another matter, and is not the filing. (*Tregambo* v. *Comanche M. & M. Co.* 57 Cal. 501, citing, *Engleman* v. *State*, 2 Ind. 91; 52 Am. Dec. 494; *Lamson* v. *Falls*, 6 Ind. 309; and *Bishop* v. *Cook*, 13 Barb. 326. See, also, *Harrison* v. *Clifton*, 75 Iowa, 736; *Holman* v. *Chevaillier*, 14 Tex. 337; *Smith* v. *Biscailuz*, 83 Cal. 358; *Howell* v. *Slauson*, 83 Cal. 544; and Bouvier's Law Dict. "File.")

The order of the District Court of April 29, 1890, to indorse the papers is not of great importance in this inquiry. That did not constitute the papers "filed." They were filed July 3, 1889, and the court finding them so filed, properly placed the case on the docket of the court and heard it. It was quite proper in the court to have the papers marked "filed" as of the day when they were filed, in order to preserve a memorandum of the fact.

The cases cited by appellant are not in point. (*Raymond* v. *Smith*, 1 Met. [Ky.] 65; 71 Am. Dec. 458; *Metcalf* v. *Metcalf*, 19 Ala. 319; 54 Am. Dec. 190; *Hudson* v. *Hudson*, 20 Ala. 364; 56 Am. Dec. 200.) These were all cases of an attempt to amend a record by entering a judgment *nunc pro tunc*, where the law required the solemnity of the record of a judgment, and nothing appeared in the record by which or upon which to amend. Mr. Justice Bach's discussion of the proposition in *Territory* v. *Clayton*, 8 Mont. 1, not cited by appellant, is satisfactory to our mind. But the principle of these cases does not interest us in this inquiry. There was no question before the District Court of amending a record. The presence or absence

of the clerk's indorsement on the papers was not conclusive. The indorsement was not a record, and ordering the case to be placed on the trial docket was not amending any record. We therefore find that the case was fully appealed from the Probate Court, and duly lodged in the District Court, prior to the admission of the State into the Union, and the abolition of the Probate Court.

Appellant argues from the Constitution (Sec. xx. Schedule, § 13) that only pending cases in the Probate Court were transferred to the District Court by virtue of said section 13, and that this was not a pending, but a determined case in the Probate Court at the time of the admission of the State. It is not pretended that the case was transferred to the District Court by virtue of the provisions of this section 13. It had fully and safely arrived in the District Court, and belonged to that court, four months before the section 13 began to operate. Nor does section 2 of the Schedule have the effect that appellant urges, viz., that the judgment of the Probate Court of May 13, 1889, was a lawful judgment of the Probate Court, in force at the time the State was admitted, and must therefore remain in full force. As we have above observed, when the State was admitted the case was wholly out of the Probate Court and wholly within the District Court. It had gained its new foothold long before its old one was swept away by the rising tide of the new order of things.

II.   Concluding that the District Court had jurisdiction to hear the matter and pronounce the judgment, we will endeavor to ascertain whether its judgment was correct. It is not questioned that if the administrator's fees are to be reckoned as provided in section 253, before amended, the cases appellant cites construing that statute are applicable. (*Estate of Isaacs,* 30 Cal. 113; *Estate of Simmons,* 43 Cal. 550; *Estate of Ricaud,* 70 Cal. 69.) But the point in controversy is whether the old law or the amendment must be invoked. Appellant insisting upon the former, relies largely upon section 276 of the Probate Practice Act, as follows: "The executor or administrator, as soon as he has sufficient funds in his hands, must pay the funeral expenses, and the expenses of the last sickness, and the allowance made to the family of the decedent. He may retain in

his hands the necessary expenses of administration," etc.   This
section is identical with section 1646 of the California Code of
Civil Procedure, which section the Supreme Court of that State
construes to mean, that the administrator's fees shall be ascer-
tained, allowed, and paid only upon his final accounting and
settlement.   (*Estate of Miner*, 46 Cal. 564; *Estate of Barton*,
55 Cal. 90; *Estate of Rose*, 80 Cal. 180; *Ord* v. *Little*, 3 Cal.
287.   See, also, 2 Wœrner's Law of Administration, § 533.)
Under that construction appellant's fees were to be ascertained,
allowed, and paid on April 11, 1889.   On that day the court al-
lowing the fees goes to the statute for instruction, and finds the
Act of September 14, 1887.   But the administrator contends
that when he was appointed, and for three and a half months
out of twenty-two and a half months, during which he was
administrator, the unamended section 253 was in force.   To
which contention the court applies the rule, that if a statute is
amended it shall be understood in the same sense as if it had
read from the beginning amended.   (*Surtess* v. *Ellison*, 9 Barn.
& C. 750; *Peters* v. *Vawter*, *ante*, p. 201.)   (The exceptions
to this rule by virtue of constitutional limitations will be con-
sidered below.)

Under the general rule, then, it is unhesitatingly concluded,
that the amended law must regulate the fees of the appellant.
Whatever right appellant had to fees prior to September 14,
1887, was an unascertained, inchoate one.   If, by virtue of his
qualifying and performing a few acts while the old law was in
force, his right to fees accrued and were to be settled upon the
percentage allowed by that law, then it must also be true, that
if he had resigned or died on September 13, 1887, before per-
forming any labors, he or his estate would be entitled to all the
fees provided by the old law.   This absurdity is not contended
for, yet it is as reasonable as the claim that, having performed
the services, the fees must be reckoned by the provisions of a
law in force when his administratorship commenced, but re-
pealed before any fees were either due, payable, or to be ascer-
tained.   On the other hand, it is the law that appellant's claim
for fees being unsettled, unallowed, and inchoate, and the creat-
ure of the statute (§ 253), it fell with the law creating it.   An
exhaustive and learned discussion of this principle by Judge

Cowan, citing and reviewing authorities, is found in *Butler* v. *Palmer*, 1 Hill, 324. (See, also, *Van Inwagen* v. *Chicago*, 61 Ill. 34.)

The legislature of Montana Territory then had the right, on September 14, 1887, to amend section 253, and diminish the fees to which appellant might become entitled at the end of his service, *unless*, on September 14, 1887, the claim of appellant was: (1) A contract; (2) a vested right; or (3) protected by the Act of Congress of the United States of July 30, 1886, commonly called the Restriction Act, the part of which material to this inquiry is as follows: "That the legislatures of the Territories of the United States, now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases; that is to say (among others), creating, increasing, or decreasing fees, percentage, or allowances of public officers during the term for which said officers are elected or appointed." The Constitution of the State is not before us for construction, as this cause of action was perfected and the controversy arose under the territorial government.

Examining the above propositions, it is not necessary to indulge in any discussions upon the general doctrine that an officer's claim to fees allowed by statute is not a contract. (See cases last cited, and *People* v. *Devlin*, 33 N. Y. 269; 88 Am. Dec. 377; *Butler* v. *Pennsylvania*, 10 How. 402; *Hoke* v. *Henderson*, 4 Dev. 1; 25 Am. Dec. 677; *Connor* v. *Mayor etc.* 5 N. Y. 285; *Miller* v. *Kister*, 68 Cal. 142. See, also, cases *infra*.) Nor is his claim to fees to be performed in the future a vested right. (Cases *supra* and *infra*.) But his claim to fees for services past, and wholly performed, upon a statutory fee bill, in force while he was performing those services, might be a vested right, of which the legislature could not deprive him by a law diminishing the fees theretofore fixed by the statute. But let us see in what position appellant stands to invoke this principle. For the first three and a half months of appellant's administratorship, the old section 253 was in force; for the remaining nineteen months of his official relation to the estate, the amendment of September 14, 1887, was the law. (Except the period of the law of March 14, 1889, which we will advert to below.)

Appellant does not separate his services as to these two

periods, and claim compensation upon services rendered in the three and a half months' period under the old law, and upon those rendered in the nineteen months' period under the amendment. If he did so, and claimed a higher percentage upon services fully performed and passed during the three and a half months' period, the argument of vested right would address itself to us with some force. (*People* v. *Pyper*, Utah, Feb. 1, 1889.) Appellant does not claim that any services were fully performed in the short period, nor does the record disclose that he had so performed them at the close of this period, September 14, 1887, so that his fees could be ascertained thereon. He gave no *data* to the District Court by which his services could be classified into these respective periods, and made no demand for such segregation. On April 11, 1889, it did appear that his claim to fees had accrued since June 1, 1887. It did not appear that any of it had accrued prior to September 14, 1887. The District Court was therefore right in concluding that the services and conditions on which fees could be claimed arose subsequent to September 14, 1887, and properly, under the facts before the court, allowed the fees upon the basis provided in the act of that date.

The legislature seems to have never tired of passing acts upon this subject, and we are again confronted with their will as expressed in the Act of March 14, 1889, going into effect April 1, 1889, by which act the fees of public administrators, and all other administrators, are placed at six per cent of the first thousand dollars, which is a reduction of one per cent on the thousand from the fees allowed by the Act of September 14, 1887. Appellant's final account was rendered April 11, 1889. The question is presented, whether the Act of March 14, 1889, in force April 1, 1889, operates to reduce appellant's claim one per cent on the first thousand dollars.

The record discloses that every act and service of the administrator was completed prior to April 1, 1889. All his services, as far as are concerned with the Act of March 14, 1889, come under the class of past services fully performed, the fees for which were wholly earned under a former fee bill before the Act of March 14, 1889, was passed; his claim to which was therefore a vested and accrued right, with which the legislature

could not interfere by that latter act. (*People* v. *Pyper*, *supra*, and cases cited in *Supervisors* v. *Allen*, 99 N. Y. 532, and cases *supra* and *infra*.)

Returning to the Restriction Act again, we have to observe, in order that the Restriction Act may protect appellant's position, two facts must be found: *First*, that appellant in his claim for fees was a public officer; *second*, that the act diminishing the fees was a "local or special law." If either of those propositions be found in the negative, the case is concluded. The Restriction Act did not forbid the legislature of the Territory from passing an act creating, increasing, or diminishing fees, percentages, or allowances of public officers during the term for which they were elected or appointed. It fell far short of the prohibitions of section 31, article v. of the Constitution, afterwards adopted by the people for the control of the legislature, and which inhibits the passing of any law increasing or diminishing the salaries or emoluments of a public officer after his election. The Restriction Act forbade only the passing of any local or special law upon the subject indicated. The only inquiry, therefore, before us is, whether the Act of September 14, 1887, was local or special. The operation of the act is not upon any particular person or officer, nor in any certain locality or localities in the Territory. It applies to all executors and administrators, public and private, throughout the Territory. What shadow or pretense of reason there is to pronounce this act local or special is not apparent to us. On the other hand, that it is not local or special seems to us perfectly clear, and so undisputably sustained by the decisions, that to discuss the proposition or review the cases would be an uninstructive compiling of elementary and well understood law. Suffice to refer to a few of the authorities: *State ex rel. Van Riper* v. *Parsons*, 40 N. J. L. 1; *Wheeler* v. *Philadelphia*, 77 Pa. St. 338; *McAunich* v. *Mississippi etc. R. R. Co.* 20 Iowa, 338; *Haskel* v. *Burlington*, 30 Iowa, 232; *Iowa R. R. L. Co.* v. *Soper*, 39 Iowa, 112; *Little Rock etc. Ry. Co.* v. *Hanniford*, 49 Ark. 291; *Dow* v. *Beidelman*, 49 Ark. 325; *Montague* v. *State*, 54 Md. 481; *Abeel* v. *Clark*, 84 Cal. 226; *State* v. *Miller*, 100 Mo. 439; *Longan* v. *County of Solano*, 65 Cal. 122; *Brooks* v. *Hyde*, 37 Cal. 366; *Humes* v. *Missouri Pac. Ry. Co.* 82 Mo. 221; 52

Am. Rep. 369; *Skinner* v. *Bogert,* 42 N. J. L. 407; *Ewing* v. *Hoblitzelle,* 85 Mo. 64; *State* v. *Tolle,* 71 Mo. 650; *Darrow* v. *People,* 8 Colo. 417; *In re Church,* 92 N. Y. 1; *State* v. *Hawkins,* 44 Ohio St. 98; and many cases in Sedgwick's Statutory and Constitutional Law, pp. 534, 535, 539, notes.

The conclusion last stated is sustained by the authorities cited, and it is not at all shaken by the cases to which the appellant has referred us in his supplemental brief. The cases he there cites were decided upon facts different from those now under consideration, and the law, as in those cases declared, does not affect the conclusion we have reached.

The judgment of the District Court is affirmed.

BLAKE, C. J., and HARWOOD, J., concur.