PIERCE, Appellant, v. PIERCE, Administratrix, Respondent.

(No. 7,833.)

(Submitted February 10, 1939. Decided March 3, 1939.)

[89 Pac. (2d) 269.]

*Messrs. Church & Jardine,* for Appellant, submitted an original and a reply brief; *Mr. Arthur S. Jardine* argued the cause orally.

*Messrs. J. W.* and *J. P. Freeman,* and *Mr. Ernest Abel,* for Respondent, submitted a brief; *Mr. J. P. Freeman* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from judgment in an action upon a claim filed by plaintiff, appellant, against defendant, respondent, administratrix of the estate of John G. Pierce, deceased.

Under the terms of a decree of divorce rendered August 7, 1930, Pierce was ordered to pay plaintiff $50 per month for the care, support and education of their minor son until he reached the age of maturity, or until further order of the court. Subsequently Pierce married defendant. He died in 1935 and defendant was appointed administratrix of his estate. Notice to creditors was given, and within four months thereafter plaintiff's claim was presented to defendant administratrix. The claim was for $2,700 in accumulated and unpaid installments due on behalf of the minor's support. It was rejected and disallowed on September 18, 1935.

The determinative question presented is whether plaintiff's suit on the rejected claim was brought within the period of limitation provided by section 10178, Revised Codes. This question in turn depends upon the date the rejected claim was filed in the office of the clerk of court.

Section 10178 provides: "When a claim is rejected either by the executor or administrator, or the judge, the holder must bring suit in the proper court against the executor or administrator within three months after the date such claim is filed, with endorsement thereon showing the rejection thereof, in whole or in part, in the office of the clerk of court in which the proceedings are pending, if it be then due, or within two months after it becomes due, otherwise the claim shall be forever barred."

Plaintiff's claim was rejected September 18th and was mailed to the clerk's office at Conrad for filing October 21st. On numerous occasions counsel for plaintiff made inquiry at the clerk's office to learn whether the claim had been filed. The testimony shows that he examined the register and files in the matter of the estate of Pierce in October and November of

1935, and in January and February of 1936. Each time the clerk informed him that the claim had not been filed, and on one visit, at least, counsel even went into the vault with the clerk in search thereof. On February 24, 1936, counsel learned from the clerk that the claim had been filed February 18, 1936, and was endorsed by the administratrix as "disallowed and unapproved this 18th day of September, 1935."

The clerk testified that he found the rejected claim among some other papers on his "stand up" desk. He could not explain how or when it got there. No postmarked envelope or letter was found with it. Upon discovering the claim, he realized that it was the same claim that counsel for plaintiff had been inquiring about. He was not certain what filing date to place upon it and therefore sought the advice of the judge, who told him to file it as of the date he found it.

On May 15, within three months of the February 18 filing date, plaintiff filed suit on the rejected claim. The cause came on for hearing and the trial judge, without a jury, heard the evidence and made his findings of fact and conclusions of law. In so far as is pertinent here he found: "That on or about the 22nd day of October, 1935, the above named defendant caused to be delivered to the clerk of the Ninth Judicial District * * * wherein the estate of John G. Pierce, deceased, was being probated, the said claim as rejected with said last mentioned endorsement, endorsed thereon, and said claim was on or about said 22nd day of October, 1935, and prior to the first day of November, 1935, duly filed in the offices of the clerk. * * * That the complaint in the above entitled cause was filed and said cause commenced on the 15th day of May, 1936." From these findings the court concluded as a matter of law that the action on the claim was barred by the provisions of section 10178, Revised Codes.

When was the rejected claim filed with the clerk? This court ▮ has held: "To file papers is to deposit them with the proper custodian for keeping. The marking of them 'filed' by the clerk is another matter, and is not the filing." (*In re De-*

*war's Estate,* 10 Mont. 426, 25 Pac. 1026, 1028; *Minneapolis Steel etc. Co.* v. *Thomas,* 54 Mont. 132, 168 Pac. 40.)

It is the contention of defendant that the undisputed proof of the mailing of the rejected claim on October 21, 1935, having been made, the presumption arises, and the court so found, "that a letter duly directed and mailed was received in the regular course of mail." (Section 10606, subd. 24, Rev. Codes.) From this it is reasoned that the rejected claim came into the custody of the clerk for filing purposes and was filed as of the date it would in the ordinary course of transmission by mail have arrived at Conrad from Great Falls. Under the circumstances of this case, and in view of the purpose of the filing requirement of a statute such as section 10178, supra, we are unable to agree that the rejected claim was filed on or about October 21, 1935.

In 11 R. C. L., sec. 238, page 215, it is stated: "One of the purposes of a statute of this character is to compel claimants promptly to seek enforcement of their claims when rejected in order that there may be a speedy ascertainment at least of the liabilities of the deceased." Such a statute is a special statute of limitations.

Prior to the amendment of section 10178, Revised Codes, in 1925 (Chap. 11), the law required a person to file suit on a disallowed claim within three months after its rejection if the claim was due, irrespective of the date of filing the claim with the clerk of court, and no notice of rejection was required. A claimant had to keep himself advised of the situation at his peril. (*Lindsay* v. *Hogan,* 56 Mont. 583, 185 Pac. 1118.) Section 10176, Rev. Codes, makes non-action for ten days after the filing or presentment of a claim equivalent to a rejection at the option of a claimant. A claimant may institute an action after the ten-day period has elapsed, but this is optional and is purely a matter of election on the part of the claimant. (3 Bancroft's Prob. Prac., sec. 867, p. 1502.)

The amendment of 1925 requiring rejected claims to be filed was obviously made for the purpose of remedying the situation with regard to notice of rejected claims. Under this section

as amended, a claimant is merely required to keep in contact with the clerk's office to learn the status of his claim. Such information can only be imparted by the clerk having knowledge and notice that such a claim is either indexed, on file, or at least in his office. In the instant case, inquiry was made of the clerk on various occasions concerning the claim. Not until the last inquiry was the clerk able to give counsel the desired information which would put him on notice that the statute of limitations had started to run against the claim.

In so far as plaintiff's rights were concerned, the rejected claim was no more filed with the clerk until such time as possession thereof came to his knowledge, than if it had never been mailed to his office. What possible notice could plaintiff get from the presence of the claim in the clerk's office which the latter did not even know was there? It could not be found, nor was it indexed or identified in any manner designed to impart notice to a party interested or to the public generally. It did not appear to exist, and, therefore, could not be regarded as existing. (Sec. 8759, Rev. Codes.) Neither actual nor constructive notice, as contemplated by sections 8780 and 8781, Revised Codes, could possibly be gained under such circumstances, and the rejected claim, for all practical purposes and particularly the purpose intended by section 10178, supra, did not exist in the clerk's files, or even in his office.

A clear distinction is drawn between the filing of a paper necessary to protect rights of a party filing it, on the one hand, and the filing of papers with respect to one whose rights are affected by notice of the filing thereof. This distinction is clearly set forth in a special concurring opinion in the case of *Morgan* v. *Williams*, 85 Fla. 219, 95 So. 611, 615, 28 A. L. R. 1020: " 'It may be that in some instances and for some purposes the mere deposit of a paper by a party or his attorney with the clerk of the court, and his receipt thereof, of itself, constitutes a "filing." ' " I quite agree with this. Thus if an attorney delivers to the clerk a paper that should be filed on a certain day, the clerk cannot put him in default by mislaying it, or failing to put his file mark on it. On the other hand, when

a paper is delivered to a clerk, which when 'filed' 'placed among the public records'—becomes notice to other parties whose rights would be affected by the notice, such paper is not filed, if the clerk mislays it, and subsequently, after making 'a search among various papers upon his desk in his office,' finds the instrument. The mandate in the postoffice—among a lot of papers on the clerk's desk—in possession of an adverse attorney, or in the pocket of the clerk, is not 'subject to be inspected by those who have an interest in it,' or 'subject to inspection by whomsoever it may concern,' and therefore is not filed." We likewise hold that the filing contemplated by section 10178 did not take place until February 18, 1936, the day on which the claim was found and came to the clerk's attention.

Defendant urges as a cross-assignment of error that the bill ▮▮ of exceptions was not filed within the time allowed by law, and should be stricken and not considered on appeal. Section 9390, Revised Codes, provides in part: "Whenever a motion for a new trial is pending, no bill of exceptions need be prepared or settled until the decision of the court upon motion for a new trial has been rendered, but a bill shall be prepared and settled in the same manner and within the same length of time after the decision on the motion for a new trial as is hereinafter provided for the making and settling of bills of exceptions. Except as above provided, the party appealing from a final judgment, if he desires to present on appeal the proceedings had at the trial, must, within fifteen days after the entry of judgment if the action was tried with a jury, or after receiving notice of the entry of judgment if the action was tried without a jury, or within such further time as the court or judge thereof may allow, not to exceed sixty days, except upon affidavit showing the necessity for further time, prepare and file with the clerk of the court and serve upon the adverse party a bill of exceptions." No order granting or denying the new trial was made and it was. therefore deemed denied. The ground relied upon in defendant's objections to the settlement of plaintiff's proposed bill of exceptions was that it was not served or filed within fifteen days after the motion for new trial

had been deemed denied. The objections were overruled and we think rightly so.

Section 9390, supra, sets out the procedure to be followed by a party appealing from a final judgment. It will be noticed that the section contemplates the preparation of a bill of exceptions where motion for new trial is made, and also where such motion is not made. Plaintiff made a motion for new trial and was, ostensibly at least, entitled to wait until her motion was disposed of before filing a bill of exceptions or asking for an extension of time in which to file it. However, the record shows that she did not wait, and the extension of time was granted November 3, 1937, the date the notice of motion and motion for a new trial were filed, within fifteen days after the entry of judgment but before any action had been taken on the motion for new trial. The bill of exceptions was filed January 4, 1938, within the extension of time granted by the court. Under these circumstances we can see no reason why plaintiff's bill of exceptions should be stricken. Her filing was within the time contemplated where no motion for new trial is filed, and having obtained an extension and filed her bill within that time, she should not and will not be penalized for having acted earlier than was necessary under the section. (Compare *State* v. *Bradshaw Land & Livestock Co.,* 99 Mont. 95, 43 Pac. (2d) 674, and cases therein cited for liberal interpretation given to section 9390, supra.)

The case of *O'Donnell* v. *City of Butte,* 72 Mont. 449, 235 Pac. 707, relied upon by counsel for defendant, is not in point for the reason that, in that case, the time allowed by statute as well as the time of extension had expired before a proposed bill of exceptions was filed. The court had lost jurisdiction and the settling of the bill thereafter was a nullity. No such situation exists here.

It should be observed that whenever a motion for new trial is pending, section 9390, supra, only provides that "no bill of exceptions need be prepared or settled until the decision of the court upon motion for a new trial has been rendered." It

does not prohibit an appealing party from preparing a bill of exceptions or getting an extension of time where a motion for new trial is pending. Such provision, from the time element standpoint, is merely a permissive one for the appealing party's benefit, and could, therefore, be waived at the party's option. (Sec. 8742, Rev. Codes.)

The judgment is reversed and the cause remanded to the district court for further proceedings.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ANGSTMAN concur.

Rehearing denied April 20, 1939.