[Crim. No. 5913.   Second Dist., Div. Three.   Oct. 31, 1957.]

THE PEOPLE, Respondent, v. CORDELIA BLAYDON, Appellant.

818

D. Brandon Bernstein for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

VALLÉE, J.—Cordelia Blaydon and Carmen Pisano were charged with preparing false evidence, forgery, and offering false and forged instruments to be filed of record. In a jury trial they were convicted as charged. Cordelia Blaydon, referred to as defendant, appeals from the judgment and an order denying her motion for a new trial.

The preparation of false evidence charged was that defendant falsely prepared the signature of a witness to the will of Miss Georgina Hargitt. Pisano was charged with having aided and abetted in the commission of the offense. The forgery charged was that defendant counterfeited the signature of a witness to the will. Pisano was charged with having aided and abetted in the commission of this offense. The offering of false and fraudulent instruments to be filed of record charged was that defendant and Pisano knowingly procured and offered the will with the forged signature of a witness, to be filed in the superior court.

From July 23, 1954, to February 28, 1956, defendant acted as practical nurse for Georgina Hargitt. She was not relieved after January 1, 1955. On February 28, 1956, Miss Hargitt died at the age of 83 or 84. During the last year and a half of her life she had failed mentally and physically.

On February 28, 1956, or the day following, defendant telephoned C. W. Encoe, an attorney at law who had acted as Miss Hargitt's attorney and been her friend for 30 years, told him Miss Hargitt had passed away, had left a will naming him executor, and requested him to come to the house, which he did. When Mr. Encoe arrived defendant handed him two loose sheets of paper, which we will call the 1955 will. The body of the will was written in defendant's handwriting. It was signed by Miss Hargitt; two names appeared thereon as witnesses, Lola Button and Carmen Pisano. The name "Carmen Pisano" was signed by him. Lola Button and two experts testified the name "Lola Button" was not written by Lola Button. Lola Button was a lifetime friend of Miss Hargitt.

Mr. Encoe took the 1955 will, put a back on it, and filed it with the clerk of the superior court for probate. It purported to devise and bequeath a parcel of realty and a dog to defendant's daughter, to devise a parcel of realty to defendant's stepdaughter, to make a number of other bequests and devises, and to devise and bequeath the residue to defendant. There were other purported bequests and devises. The address of each beneficiary was stated in the instrument. The value of the estate was about $235,000.

Mr. Encoe testified that in February 1955 Miss Hargitt called him and asked him to come out and look at a proposed will she had prepared; he went to her home; Miss Hargitt handed him a paper, said it was in defendant's handwriting, and it was her proposed will; he read the paper; it gave the residue of Miss Hargitt's estate to defendant; he raised an objection because it contained a provision for monthly payments over a long period to a legatee, not defendant, and told Miss Hargitt that if she wanted such a will prepared it would have to be in the form of a trust; Miss Hargitt appeared to be of sound mind and alert at the time; he had prepared a will for her in 1950 which was executed.

On March 20, 1956, an investigator for the district attorney had a conversation with defendant in the presence of her attorney. Defendant told the investigator that on February 15, 1955, Miss Hargitt expressed a desire to execute a will; at Miss Hargitt's request she wrote a letter to Lola Button asking her to come to the Hargitt home; Miss Hargitt, Lola Button, Pisano, and defendant were present; she did not know how Pisano happened to be there; Miss Hargitt dictated and she wrote the body of the 1955 will in her hand-

writing; when Miss Hargitt completed the dictation, she (defendant) read it aloud; Miss Hargitt looked at it and signed it; Lola Button had it in her hand, seemed to be reading it, and signed it; and Pisano signed it; her daughter was in the Hargitt house at the time.

An expert called by the People testified Lola Button did not sign the name ''Lola Button'' on the 1955 will; he was not able to say that defendant signed the name ''Lola Button''; there were similarities between the handwriting of Pisano and the signature ''Lola Button''; he could not give a definite opinion as to who signed the name ''Lola Button.'' Another expert called by the People testified Lola Button did not sign the name ''Lola Button'' on the 1955 will; he could not say that defendant wrote the name ''Lola Button.'' He testified further: ''Q. Now, Mr. Davis, one question: Can you tell me whether Carmen Pisano wrote the name Lola Button on Exhibit 1 [the 1955 will]? A. Well, I saw some characteristics and some of his writing that caused me to believe that he possibly could have, he was capable of it. Q. You couldn't give me an unqualified opinion in that respect, could you, Mr. Davis? A. No. Q. So actually you couldn't tell me who wrote the handwriting 'Lola Button'? MR. STOVITZ: On Exhibit 1, counsel? MR. WHITEHILL: On Exhibit 1? A. No, as I stated in my opinion this is a definite attempt to forge the name and simulate the handwriting of Mrs. Button and that is one of the best ways to disguise your own writing is to write like somebody else. Whoever did it, I believe largely disguised it, as far as their own writing is concerned by trying to simulate the writing of Mrs. Lola Button. Q. But you couldn't tell me who wrote the name Lola Button on Exhibit 1, could you? A. No.''

Defendant testified she was at the home of Miss Hargitt as her nurse from July 23, 1954, until she died in 1956; on February 14, 1955, Mr. Encoe came to Miss Hargitt's home and discussed a writing which had been dictated to her (defendant) which Miss Hargitt said was her last will in which she expressed a desire to leave Elizabeth McDowell $50 a month as long as she lived; Mr. Encoe and Miss Hargitt discussed this and the use of the word ''residue'' instead of ''balance.'' Lola Button was there at the time and commented on defendant's handwriting; the next day Miss Hargitt dictated the 1955 will to defendant. Miss Hargitt had only started dictating when Lola Button arrived. Before Miss Hargitt finished dictating Pisano came to the door. She was not

positive whether she called him or whether Miss Hargitt called him. Miss Hargitt said, "Let's call Carmen now." Miss Hargitt talked to Pisano on the telephone. Miss Hargitt signed the instrument, Lola Button signed it standing, Miss Hargitt said to Pisano "Will you put your John Henry on my will" and Pisano signed; Miss Hargitt was a chain cigarette smoker and as Lola Button signed, Miss Hargitt accidentally dropped some cigarette ashes on Lola Button's hand, Lola Button jumped back, and then resumed writing her name; her daughter was not in the Hargitt house at the time; after Pisano signed Miss Hargitt folded the will and put it in her pocket; that night she had her (defendant) put it in a ledger which she put in a Pullman case where it remained until Miss Hargitt passed away; at Miss Hargitt's request she destroyed the paper Miss Hargitt had shown Mr. Encoe the day before; Lola Button stayed, had dinner, and left about nine.

Pisano testified: Prior to February 1955 Miss Hargitt had been a customer at his place of business, a service station, and he had been to her home on several occasions making deliveries. On February 14, 1955, the day before the 1955 will was signed, defendant telephoned Pisano and asked him to come to the Hargitt home, that Miss Hargitt wanted him to sign a paper for her. Later that day defendant called him again and told him not to come out, that it was not necessary. The next day, immediately after lunch, defendant called him again and asked him to come out to the house, that Miss Hargitt wanted him to sign a will. He arrived at the Hargitt home about 1:30. When he arrived Lola Button was there. He was introduced to her. Pisano's testimony with respect to execution of the will was substantially the same as that of defendant.

Two or three days after Miss Hargitt's death Pisano contacted Mr. Encoe and told him Miss Hargitt had given him an envelope with instructions to deliver it to Mr. Encoe. Mr. Encoe had not known Pisano prior to that time. He went to a gas station and Pisano gave him a sealed envelope. In the envelope there were three statements dated February 17, 1955, signed by Miss Hargitt, and an undated check for $5,000 payable to defendant.[1] The three statements were purport-

---

[1]The statements read:

"I Georgina Hargitt—am dictating this to a young man I feel is sufficently [sic] disinterested and has shown himself to be trustworthy in my dealings with him. There are very few people I can trust. I have

edly dictated by Miss Hargitt. They were written by Pisano except the signatures of Georgina Hargitt at the top and

---

drawn up my will, and I —— have had this young man, Carmen Pisano and my friend Lou Button sign as witness, and I want this paper given to my lawyer whom I have named executor (since Phyllis refused the honor) My lawyers name is Mr. Encoe. I wish I could be here to enjoy the fireworks ~~Write smaller young man~~ I am entrusting these things to this young man and he has promised to keep them and present them to my attorney in the event of any difficulty before or after my death. I understand that Mrs. Pauline Peet is planning to sue my estate. I will not have it. She is a malicious person and has lied to me and to my friends. She came here soon after my sister Mayme passed on, and asked to stay 2 or 3 days. She stayed 2 years, like the man who came to dinner. She tried to run my affairs and I wouldn't have it. I made her very angry. I offered to pay her for any services rendered. She refused. I gave a private room, and bath, meals, and entertainment and cab fare.

"the date is Feb 17, 1955
"the time is 2 p m
"Georgina Hargitt"

"I Georgina Hargitt am setting forth these few things which trouble me and am entrusting these papers to the care of the young man Carmen Pisano. This paper in particular I would like in the hands of my attorney Mr. Encoe should the need arise in the near future or thereafter. If the time should come that I am stricken and do not have use of my faculties, I have provided a power of attorney for Phyllis Bennett I trust her completely, she is my good freind [sic] and I know she will help me. This is true of her mother, my nurse Mrs. Blaydon and I wish them to care for me in this event. I do not want Dr Goldberg appointed administrator over *any* ~~underline that~~ of my affairs. Both Phyllis and Cory are reluctant to handle my affairs and should they need help they are to consult with Mr. Encoe my attorney. If Dr Goldberg should suggest or would try to prove me incompetent or have me committed to any institution at anytime now or in the future, his inheritance is to be sold, and the proceeds to be presented to the childrens hospital. I do not trust this man, he is too interested in my affairs I have not named Alice or Joe McDonald in my will. I feel any services they have rendered, have been amply repaid by the simple process of allowing their rent to remain unchanged, despite all other rising costs. She says she is my freind [sic], but I have heard her talk behind my back.

"The date is Feb 17, 1955
"The time is 2 p m.
"Georgina Hargitt"

"Now the next thing I want is some protection for (Cory) Mrs. Blaydon when the vultures settle down. She has promised to stay with me to the end God willing. If & when the time comes I want this check deposited to Mrs. Blaydon's account for her use during the time my estate maybe [sic] in probate. If for some reason my check would be null and void I want provision made for Cory to receive not less than 00 . $200.~~xx~~ per month during probation period. I also want her to remain at my home at 1486 So Rexford during the time of probation also the executor to see that utilities are paid the same as the other real properties

" (The check is not dated.)
"This dat is Feb. 17, 1955
"the tim is 2 pm.
"Georgina Hargitt"

bottom, which were written by her. The face of the $5,000 check was written by Pisano. Pisano testified: On February 17, 1955, two days after the 1955 will was signed, defendant telephoned him and asked him to come out, that Miss Hargitt wanted him to fill out a couple of letters for her. Pisano said he was dirty. Defendant said, ''Well, make it as quick as you can.'' He did, defendant let him in, Miss Hargitt was in the living room, defendant did not remain in the room. Miss Hargitt asked him if he would write some letters for her. Miss Hargitt dictated the three statements to him and he wrote them. The name ''Georgina Hargitt'' was written by her. Miss Hargitt showed him a blank check and asked him to write ''Mrs. Cordelia Blaydon, five thousand dollars and no/100,'' and the numerals $5,000 on it. Later she signed the check, put the three statements and the check in an envelope, and sealed it. Mr. Encoe's name was written on the face of the envelope. He does not know who wrote it. Miss Hargitt gave him the envelope and told him not to give it to anyone but Mr. Encoe in case anything should happen to her. He kept the envelope unopened and delivered it to Mr. Encoe after Miss Hargitt passed away.

It is first asserted there was no proof of the corpus delicti in that the failure to connect defendant with the physical act of forgery constituted a failure of proof. The point is without merit. ■ The body of the instrument was admittedly in defendant's handwriting. There is ample evidence that the signature ''Lola Button'' was forged, that defendant handed the instrument with the forged signature to Mr. Encoe for probate, and that he filed it with the county clerk for probate. Such evidence constitutes proof of the corpus delicti of the offenses charged. (Pen. Code, §§ 31, 134, 470; *People* v. *Horowitz*, 70 Cal.App.2d 675, 686-688 [161 P.2d 833].)

■ It is asserted there was no evidence defendant personally forged Lola Button's name or aided therein. The point is based on the testimony of the experts that they could not say that defendant signed the name ''Lola Button.'' There is no direct evidence defendant forged the name or aided and abetted Pisano in doing so. We think there was ample evidence from which the jury could have found that defendant aided and abetted Pisano in forging the name. Defendant wrote all of the 1955 will except the name ''Georgina Hargitt'' on the first page and the date and the signatures ''Georgina Hargitt'' and ''Carmen Pisano'' on the second page. The signature ''Lola Button'' was a forgery. There were similari-

ties between Pisano's handwriting and the forgery. There was evidence that during the last year and a half of her life Miss Hargitt's mind was not as clear as it had been in earlier years. At her death about a year after the instrument was signed, she was 83 or 84 years of age. Defendant's daughter was given Miss Hargitt's home place, appraised at $25,000. Her stepdaughter, whom Miss Hargitt had met only once or twice, was given a parcel of realty appraised at $25,000. And defendant was given the residue, appraised at about $144,000. Defendant's testimony relative to Lola Button's signing was in conflict with that of Lola Button and the two experts. Defendant's testimony was in conflict with the statement she made to the district attorney's investigator. Defendant knew that signatures of two witnesses were necessary to the validity of a will. On the day Miss Hargitt passed away or the day following, defendant called Mr. Encoe and told him of her death, that she had left a will in which he was named executor, and asked him to come out to the house. Defendant gave him the instrument for the obvious purpose of having it probated, and it was admitted to probate. Pisano testified at the hearing. In 1950 Mr. Encoe had prepared a will for Miss Hargitt which was duly executed. The 1955 will was supposed to have been dictated by Miss Hargitt to defendant and was written in defendant's handwriting at a time when Mr. Encoe was available. The last line of the body of the 1955 will was squeezed in after Miss Hargitt signed it. Defendant testified she added the last line after Miss Hargitt signed at the latter's request. When defendant gave Mr. Encoe the 1955 will he asked her who Lola Button was. Defendant told him Lola Button was too ill to go to court. About six months before Miss Hargitt passed away defendant had the Hargitt telephone number changed to an unlisted number, and during that period Miss Hargitt's friends had difficulty gaining entrance to the house. During that time defendant refused to let Mr. Encoe see Miss Hargitt. On Miss Hargitt's passing Pisano produced three statements in his handwriting and a check for $5,000 payable to defendant supposedly written two days after the will was purportedly executed. The facts related support the finding that defendant was guilty of the offenses charged. Defendant's argument to the contrary is largely one with respect to the weight of the evidence. Our function ends when we find substantial evidence which supports the verdict. A reviewing court must disregard contrary evidence as well as contrary inferences and conclusions which were not, but which might have been, drawn by the trier of fact.

■ It is contended the district attorney was guilty of prejudicial misconduct in his argument to the jury. The district attorney commented to the effect that defendant could have called an expert to meet the testimony of the experts called by the People. There was no misconduct. (*People* v. *Fitzgerald*, 14 Cal.App.2d 180, 205 [58 P.2d 718].) The district attorney may comment on the failure of the defendant to produce material witnesses who would substantiate his story.

■ After commenting on the failure of defendant to call an expert the district attorney queried the jury, "Ladies and gentlemen, did Mrs. Blaydon have funds sufficient enough to hire a handwriting expert?" Defendant objected and cited the statement as misconduct. The court immediately said there was no evidence on that at all and instructed the jury to disregard the query. Defendant was not prejudiced.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1957. Carter, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.