[Crim. No. 8.   Fifth Dist.   Dec. 27, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE
HENRY SANTENS, Defendant and Appellant.

Andrew David and Ronald Gould for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and C. Michael Gianola, Deputy Attorney General, for Plaintiff and Respondent.

BROWN, J.—This is an appeal from the judgment of conviction of defendant on the charge of conspiracy to obstruct justice in violation of subdivision 5 of section 182 of the Penal Code, by indictment.

Defendant was involved in a divorce action in which the custody of three minor children was at issue. In that trial defendant was asked by his wife's counsel if he knew a woman by the name of either Loraine Longoria or Patricia McEntire. Defendant, testifying under oath, denied knowing this party. This inquiry was for the purpose of attempting to bring to the trial court's attention, in its consideration of the custody of the minor children, the fact that defendant had been living in a meretricious relationship with this woman who, in fact, had a prior criminal record.

After the interlocutory decree was entered granting the custody of the children to defendant, the wife of defendant filed a motion for a new trial based on the ground of newly discovered evidence.

Defendant and said woman, Loraine Longoria, also known as Patricia McEntire and as Lorene Erskine, went to the office of defendant's attorney where they each read and signed certain affidavits which were subscribed and sworn to before a notary public. These affidavits were left at the office of defendant's attorney and were later filed with the clerk of the court of Tulare County on June 1, 1959, in opposition to a motion for a new trial. There is no testimony as to how these affidavits actually got to the clerk's office. The said motion was heard on June 9, 1959, at which time Mr. Bianco, defendant's attorney, used the affidavits in arguing and presenting defendant's opposition to the motion. Defendant deposed in his affidavit that the first time defendant and said Lorene Longoria (now Erskine) had "met" was in the latter part of April or first part of May 1959, which was subsequent to the date of the divorce trial which commenced on December 30, 1958. Thereafter, the grand jury, on January 11, 1961, returned an amended indictment against defendant and Robert Erskine and Lorene Erskine, charging them with the

crime of conspiracy to obstruct justice, in violation of subdivision 5 of section 182 of the Penal Code.

Overt Act No. I charged in the amended indictment a certain conspiracy upon which no evidence was introduced by the district attorney and later was withdrawn.

Overt Act No. II charged:

"That pursuant to said illegal combination, confederation, agreement and conspiracy, and to carry out the objects thereof, the said defendants, George Henry Santens, Robert Erskine and Lorene Erskine on or about the 1st day of June, A.D., 1959, did each file their false and fraudulent affidavit with the clerk of the said court in the said proceedings. The said affidavits did falsely and fraudulently represent that the first time defendants, George Henry Santens and Lorene Erskine had met was in the latter part of April or the first part of May, 1959, when in truth and in fact defendants, George Henry Santens and Lorene Erskine had known each other intimately during most of 1958, and all of the first part of 1959."

There was no conflict in the testimony and it was definitely proved that Lorene had known the defendant most of 1958 and all of the first part of 1959, and in fact, had lived in defendant's home with him during this time, gone on trips with him and had engaged in sexual relations. In fact, Lorene testified that she had even loaned defendant $160,000 which was secured by a deed of trust dated June 7, 1959, on defendant's ranch.

During the trial of defendant's divorce action the said Lorene would see defendant almost daily to discuss the trial. Lorene testified in the case pending that the defendant denied knowing her because of her criminal background and that he did not either want to lose the custody of his children, lose his property, or anger his father.

Thereafter, on May 16, 1959, defendant told Lorene that the attorney for defendant's wife had filed an "appeal" which was, in fact, a motion for a new trial, and asked Lorene if she would sign an affidavit to the effect that they had not known each other prior to 1959. Lorene stated that she preferred not to as she was afraid, but later agreed to go to the office of defendant's attorney and sign an affidavit that they had not known each other prior to 1959 and she further agreed that she would see that her husband, Mr. Erskine, would likewise sign such an affidavit.

At the trial of the present case defendant did not take the

stand nor present any evidence nor call any witnesses on his behalf. At the conclusion of the People's case, the defendant moved the court to advise the jury to bring in a "not guilty" verdict under section 1118 of the Penal Code. The motion was denied. Thereafter, the case was submitted to the jury and on May 26, 1961, the jury found defendant guilty as charged in the amended indictment.

Defendant contends that the evidence was insufficient to sustain the charging allegation of the indictment wherein the overt act was alleged to be that defendant and others "did each file" a false affidavit with the clerk. It is argued that the evidence failed to establish that defendant "did file" as distinguished from "did cause to be filed" the false affidavit and hence plaintiff failed to meet the burden of proving the specific overt act charged beyond all reasonable doubt and to a moral certainty. There was no evidence as to who physically deposited the affidavits with the county clerk for filing. The cases cited by defendant in support of his argument define the term "filed" as "to deposit papers with the proper custodian for keeping" (*Pierce* v. *Pierce*, 108 Mont. 42 [89 P.2d 269]); "to place on file, or more generally, to deposit papers in official custody, or receive them officially for orderly systematic safekeeping" (*State* v. *Lewis*, 41 La. Ann. 1207 [22 So. 327, 328]), and statements to the same effect.

Apparently it is defendant's theory that in order to meet the language of the indictment, plaintiff would have to prove that defendant physically and personally delivered the affidavit to the county clerk with a request that it be filed of record in the pending divorce action. With this we cannot agree. The words "did file," although a part of the charging allegation in this criminal proceeding, relate to an act which took place in connection with a civil action. It is therefore necessary to consider the usual and ordinary method of filing an instrument in a civil action in order to determine whether the evidence showed defendant did the act. Running throughout the entire body of statutory law and rules governing practice and procedure in this state are requirements that a specified party litigant perform an act, or publish a notice, or file an instrument, or serve a pleading. In the contemplation of the law, with certain exceptions not pertinent here, these requirements have always been met if performed by either the party litigant or his attorney of record, acting in his behalf. If this court should now hold that an affidavit, prepared by defendant's then attorney with defendant's

cooperation as to its contents and executed by defendant for use in opposing an adversary motion in litigation then pending between defendant and his former wife and which was, in fact, used by his attorney for the known purpose and is now on file in the records of such action, was not "filed" by defendant for the reason that he did not perform the physical task, the door would be open to future litigation and appeals without end. In the numberless instances where the law requires a designated party litigant to file an instrument, without specifying that such filing may be done through his attorney, the question will arise as to whether the instrument was "filed," unless in each case the litigant personally presented the instrument to the proper official with the request that it be filed. For example, rule 4(a) of the Rules on Appeal provides that an appellant shall serve and file with the clerk of the court a notice to prepare transcripts. To hold that this court cannot consider, in this case, the transcript before it because the appellant did not personally and physically file the required notice, would reach a ridiculous conclusion. Yet, if we give to the words "did each file" the narrow construction contended for by defendant, the conclusion would be inescapable. When, therefore, defendant's affidavit was brought to and deposited with the clerk for filing, it was, in contemplation of law, filed by defendant.

In *People* v. *Blaydon,* 154 Cal.App.2d 817 [317 P.2d 24], defendant was prosecuted for preparing false evidence, forgery and offering false and forged instruments to be filed of record. There was ample evidence that the signature on a will was forged, that defendant handed the will to an attorney at the defendant's home, and that the attorney subsequently filed it with the county clerk for probate. The court held that such evidence constituted proof of the corpus delicti of the offenses charged and affirmed a judgment of conviction. Applying defendant's construction of the word "file," the defendant in the *Blaydon* case never "offered false and forged instruments to be filed," since all he did was hand the false will to an attorney in the privacy of his own home. He did not personally go to the office of the clerk; no mention is made of evidence that he requested the will be filed or knew it would be filed; yet, in the eyes of the law, he offered it for filing. We believe that defendant "did file" the affidavit in the civil action and the evidence was sufficient to support the language in the indictment.

Defendant's contention that the evidence failed to

establish the act of falsely representing is without merit. His argument is based on the theory that the affidavit of George Henry Santens which was filed does not in fact represent that the first time the defendant and Lorene met was in the latter part of April or the first part of May 1959. The affidavit sets forth the alleged meeting with Lorene as follows:

". . . in the latter part of April or the first part of May, 1959, . . . and asked him to come to his house to discuss the matter and invited him to dinner; that at said time and place said Erskine brought with him his wife, Lorene Erskine, and their three-months old child, who he now knows to have been Patricia McIntyre; . . ."

It seems that defendant is quibbling about what the word "met" means, inasmuch as it is hard to imagine his having dinner with Lorene and to consider that the two did not meet. The defendant's affidavit is implicit with the representation that he had not, prior to the dinner, "met" Lorene. That was the very purpose for which the affidavit was made and for which it was used.

In Lorene's affidavit she stated:

". . . the first occasion that affiant had to meet Mr. Santens was in the latter part of April or early part of May, 1959, when she and her husband and their child went to the Santens home for dinner; . . ."

Taken together, the two affidavits clearly show that defendant's attorney definitely tied in the alleged first meeting of the two parties between April and May of 1959.

A peculiar twist of the circumstances is set forth in the reporter's transcript when the attorney for the defendant implies that the other coconspirator was actually blackmailing the defendant and thus got him to execute the note and deed of trust for $160,000. This is opposite to the claim that Lorene was coerced into signing the affidavit.

We think the evidence sufficiently shows that there was no coercion of Lorene; that the two parties did enter into an agreement to make the affidavits; that they did make the affidavits; that the same affidavits were actually filed in the superior court and were used by defendant's attorney.

The last argument by the defendant is that the court committed error in denying defendant's motion to advise the jury to bring in a verdict of "not guilty," as set forth in section 1118 of the Penal Code. We see no error in this, inasmuch as there was sufficient evidence, if accepted by the jury, to justify a conviction.

The controverted issues were resolved against defendant by the jury and since there was sufficient evidence to support the conclusion of guilt, the judgment is affirmed.

Conley, P.J., concurred.

Stone, J., deeming himself disqualified, did not participate.